UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETER HUSTON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>FLS LANGUAGE CENTRES d/b/a FLS International, DAL SWAIN, and RICARDO SILVA,<br><br>        Defendants. | Civil No.<br>13-13158-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND**

**SAYLOR, J.**

This is a claim for overtime and minimum wages under state law. Plaintiff Peter Huston has brought suit against defendants FLS Language Centres d/b/a/ FLS International, Dal Swain, and Ricardo Silva for failure to pay wages in violation of Mass. Gen. Laws ch. 149, § 18, and violations of the Massachusetts Minimum Wage Statute, Mass. Gen. Laws ch. 151, § 1.

Plaintiff originally brought this action in Suffolk Superior Court. On December 13, 2013, defendants removed the case to this Court. Plaintiff filed a motion to remand the case to state court on December 18, 2013, contending that the case does not satisfy the $75,000 amount-in-controversy requirement. On January 3, 2013, defendants filed a motion to dismiss.

For the following reasons, plaintiff's motion to remand will be granted, and plaintiff's request for attorneys' fees will be denied. Defendants' motion to dismiss will remain pending after remand to the Superior Court.

I.   **Background**

   A.   **Factual Background**

Peter Huston is a resident of Arlington, Massachusetts. (Compl. ¶ 3). He was employed as a teacher by defendant FLS Language Centres d/b/a FLS International, from April to October 2013. FLS is a California corporation with a principal place of business in Pasadena, California. (*Id.* ¶¶ 3-4). Dal Swain and Ricardo Silva are the president and treasurer of FLS, respectively. (*Id.* ¶ 5-6). The parties appear to agree that Swain and Silva are not citizens of Massachusetts.

FLS operates a facility in Boston, providing English language programs and curricula. (*Id.* ¶ 11-12). At least thirty to fifty teachers have been employed by FLS in Boston in the last three years. (*Id.* ¶ 15). FLS pays its teachers on an hourly basis. (*Id.* ¶ 16).

FLS allegedly does not pay its teachers for class-preparation time or time spent preparing student-progress reports and grades. (*Id.* ¶¶ 18-20). FLS teachers spend approximately three to six hours a week preparing to teach their class and performing grading tasks. (*Id.* ¶ 21). They also spend approximately four hours a month preparing student-progress reports. (*Id.* ¶ 24).

The complaint does not indicate either the number of hours worked by, or the amount of wages paid to, Huston. According to submissions by the parties, which do not appear to be disputed, FLS paid Huston an hourly wage of $22. (Pl. Mem., Ex. 1). Over his seven-month period of employment, Huston worked 676 hours and was paid $14,789 in wages. (Def. Mem., Ex. 1).

   B.   **Procedural Background**

Plaintiff filed this case on November 12, 2013, in Suffolk County Superior Court. Defendants removed it to this Court on December 13, 2013, on the basis of diversity jurisdiction.

On December 18, plaintiff filed a motion to remand to state court, contending that the case did not satisfy the $75,000 amount-in-controversy requirement for diversity jurisdiction. That motion also requested an award of attorney's fees incurred by the remand, contending that defendants had no good-faith basis for the removal.

On January 3, 2014, defendants filed a motion to dismiss. On January 10, 2014, the Court stayed the deadline for plaintiff's response to the motion to dismiss pending the resolution of the motion to remand.

## II.  Analysis

"The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009). Defendants, therefore, "bear the burden of showing that removal was proper." *Fayard v. Northeast Vehicle Services, LLC*, 533 F.3d 42, 48 (1st Cir. 2008). "The removal statute, 28 U.S.C. § 1331, permits removal only where the district court could have exercised original jurisdiction over an action." *Id.* at 45.

Defendants contend that the Court has jurisdiction under 28 U.S.C. § 1332, which grants federal district courts original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). Plaintiff does not dispute that the parties are diverse. Instead, he contends that the case does not meet the $75,000 amount-in-controversy requirement.

### A.  Standard for Proving Amount in Controversy on Removal

The First Circuit has not yet decided how heavy a burden the removing party must bear when proving the amount-in-controversy requirement. *Milford-Bennington R. Co. Inc. v. Pan*

*Am Railways, Inc.*, 695 F.3d 175, 178-79 (1st Cir. 2012).  However, it has held that a defendant removing a case to federal court under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, must show a "reasonable probability" that the amount in controversy will exceed the jurisdictional threshold.  *Amoche*, 556 F.3d at 48-49.[1]

There is no obvious reason why the burden of showing that the jurisdictional amount has been met should be different for removal under diversity of citizenship than under CAFA.  *See Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp. 2d 230, 236 (D. Mass. 2010) ("In this court's view, every reason the First Circuit used in *Amoche* in arriving at the 'reasonable probability' standard in the context of CAFA applies equally as well" in the context of diversity jurisdiction); *Providence Piers, LLC v. SMM New England, Inc.*, 2013 WL 178183, at *3 (D.R.I. Jan. 16, 2013) (collecting cases from New Hampshire and Massachusetts).  Accordingly, the Court will apply the "reasonable probability" standard of *Amoche* to this matter.

The question is thus whether defendants have shown a reasonable probability that the amount of controversy in this case exceeds $75,000.  *See, e.g.*, *Reynolds v. World Courier Ground, Inc.*, 272 F.R.D. 284, 286 (D. Mass. 2011).  The following appears to be the appropriate analytic framework for considering that question:

> First, if the jurisdictional amount is not facially apparent from the complaint, then a court need look to the notice of removal and any other materials submitted by the removing defendant.  However, whether a defendant has shown a reasonable probability that the amount in controversy exceeds the jurisdictional minimum may well require analysis of what both parties have shown.  Second, as part of the analysis of whether a removing defendant has met the standard of "reasonable probability," a court may consider which party has better access to the relevant

---

[1] Although this case is a putative class action, defendants do not rely on CAFA as the basis for removal. Such removal would require an aggregate amount in controversy exceeding $5 million.  *Amoche*, 556 F.3d at 43. Accordingly, the individual plaintiff's claim must exceed $75,000 for diversity jurisdiction.  *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 10 (1st Cir. 2001).

information. Third, a court's analysis of the amount in controversy focuses on whether a removing defendant has shown a reasonable probability that more than the jurisdictional minimum is in controversy at the time of removal. Fourth, any doubts in the evidence should be construed in favor of remand because the court has a responsibility to police the border of federal jurisdiction. Fifth, this preliminary determination concerning whether a defendant has met its burden should be done quickly, without an extensive fact-finding inquiry. Finally, a plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.

*Id.* at 286 (internal quotations and alterations omitted) (collecting First Circuit cases).

### B.    Plaintiff's Specific Damage Allegations

The Court first looks to plaintiff's specific damage allegations to determine the amount in controversy. *See Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995). Although there are no damage allegations in the complaint, plaintiff's state-court civil cover sheet claims damages of "$250k+." (Notice of Removal, Ex. 2). Defendants contend that this ends the inquiry, as that means plaintiff has alleged damages of more than $75,000. Plaintiff contends the amount was "[q]uite obviously . . . meant to encompass the estimated value of the [p]laintiff's and the putative class's claims, and not just the [p]laintiff's claim individually." (Pl. Mem. at *4 n.1). As plaintiff notes, a claim of $250,000 in individual damages arising out of only seven months of work would lead to absurd results. At $22 per hour, a person would have to work 11,364 unpaid hours to achieve $250,000 in damages; there are only 8,760 hours in a normal (non-leap) year.

The trial court in *Polion v. Wal-Mart Stores, Inc.*, 2004 WL 3120092 (Mass. Super. Dec. 6, 2004), handled a similar question concerning the jurisdictional limitation between Superior and District Courts of Massachusetts. The defendant in that case contended that the $25,000 claimed damages on the cover sheet meant that the plaintiffs in the class action were alleging

damages of $25,000 each. *Polion*, 2004 WL 3120092, at *7. The court noted that "[t]he statement of anticipated damages [on the cover sheet] merely enables the Clerk of the Court to determine, on the face of the cover sheet, whether the Superior Court has the $25,000 minimum required jurisdiction over the case, or whether it should be transferred to a District Court." *Id.* It found "no authority, by law or in practice," for the defendant's contention that the damages on the cover sheet represented an amount claimed by each named plaintiff rather than the entire amount of the lawsuit. *Id.*

Here, there is only one named plaintiff. Nonetheless, it is reasonable to conclude that the claimed damages of more than $250,000 on the cover sheet represented the amount in controversy plaintiff expected the entire class to recover. That amount is not sufficient to establish federal jurisdiction.

### C.     The Face of the Complaint

Usually, "a court decides the amount in controversy from the face of the complaint, 'unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith.'" *Coventry Sewage Associates*, 71 F.3d at 4 (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961)). Again, the complaint itself alleges no specific damages. When determining an amount in controversy, "federal courts must look to state law to determine the nature and extent of the right to be enforced in a diversity case." *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 43 (1st Cir. 2012) (internal quotations and alterations omitted). "[W]hen a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." *Lucas v. Ultima Framingham LLC*, 2013 WL 5405668, at *3 (D. Mass. Sep. 27, 2013) (quoting *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d

214, 222 (D.N.H. 2004)).

The complaint asserts three types of claims for monetary damages.  First, it requests damages in "the full amount of the [p]laintiff's . . . unpaid wages, treble damages, plus interest and [his] reasonable attorneys' fees and expenses" for alleged violations of Mass. Gen. Laws ch. 149, § 148.  (Compl. ¶ 40).  Second, it requests "the full amount of the [p]laintiff's . . . unpaid wages, treble damages, plus interest and their reasonable attorneys' fees and expenses" for alleged violations of Mass. Gen. Laws ch. 151, § 1.  Finally, it requests an order requiring a certified, independent accounts of all payroll and financial records in the possession of defendants, at their expense.[2]

The complaint does not allege how many hours a week plaintiff worked or what he was paid.  It also does not allege the cost of the accounting plaintiff requests.  Therefore, the face of the complaint is not sufficient to determine the amount in controversy in this case.

### D.     Extrinsic Evidence

If the jurisdictional amount is not apparent from the face of the complaint, a court can then consider evidence submitted by the parties.  *Reynolds*, 272 F.R.D. at 286.  Both parties appear to agree that plaintiff was paid $22 per hour.  Defendants have submitted payroll records showing that plaintiff was paid a total of $14,789 in wages for 676 hours of work over the course of his seven-month employment.  (Def. Opp., Ex. 1).

As noted, the complaint alleges that plaintiff spent three to six unpaid hours each week preparing to teach his class and performing grading tasks.  It also alleges that he spent four unpaid hours per month preparing student-program reports.  Assuming a wage of $22 per hour

---

[2] The complaint also requests an injunction ordering defendants to begin paying their employees their future unpaid wages.  As plaintiff is no longer employed by defendants, that injunction has no value for him.

and a 30-week work history, plaintiff's alleged damages are $1,980 to $3,960 for teaching preparation and grading, and $616 for preparing progress reports, for a maximum total of $4,576. Even with trebling under Mass. Gen. Laws ch. 149, § 150, the maximum total damages would be $13,728.

However, plaintiff has also made a separate claim for violation of the state minimum-wage law. In addition, the value of the accounting must be included. *See Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1, 3 (1st Cir. 2004) ("the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation.").

Defendants contend that plaintiff's minimum-wage claim exceeds $75,000, because a minimum-wage violation occurs when an individual's average hourly wage is below the minimum wage. *See Dagan v. Jewish Community Housing*, 45 Mass. App. Ct. 511, 522 (1998) (calculating whether minimum wage was violated by dividing the total amount of compensation by the total hours worked). Here, because plaintiff was paid $14,789 for 676 hours of work, his average wage was approximately $22 an hour, a wage significantly higher than the $8 hourly minimum prescribed by Mass. Gen. Laws ch 151, § 1. According to defendants, if plaintiff is alleging that he was paid an hourly wage below $8, it therefore necessarily follows that he is alleging that he worked more than 1,172 hours without pay.[3] According to defendants, if plaintiff is seeking $22 per hour for 1,172 hours, he is claiming $28,128 in damages, which would total $84,384 when trebled.

Defendants' approach is, at a minimum, inconsistent with the allegations in the

---

[3] Assuming plaintiff was paid $14,789, he would had to have worked 1,849 total hours to have an average wage of $8. Assuming that was true, plaintiff had to have worked 1,172 hours without pay.

complaint. Plaintiff contends that he was paid a contractual rate of $22 per hour for certain work, and zero for certain other work. The alleged unpaid hours, at most, total 208 over a 30-week period. If plaintiff is correct, he is owed either $22 for each of those hours or the state minimum wage of $8. Defendants' fanciful reconstruction of plaintiff's claim is not an appropriate starting point for measuring plaintiff's alleged damages.

Furthermore, even assuming plaintiff's 208 unpaid hours are added to his 676 paid hours, and his total compensation of $14,789 is averaged over all 884 hours, it simply means that plaintiff's minimum-wage claim is not meritorious. When determining jurisdiction, a court cannot take into consideration whether plaintiff would succeed on his claims. *See Amoche*, 556 F.3d at 51 ("That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal.") (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)).

Accordingly, the Court finds that the alleged damages arising out of plaintiff's minimum-wage claim, for the purposes of calculating the amount in controversy, are no greater than $4,576, trebled under ch. 149, § 150, to $13,728.

There remains the questions of the claims for an accounting and attorney's fees. Defendants have introduced evidence that an accounting of the payrolls from 2013 would cost approximately $52,500. The amount in controversy, however, can only involve an audit of plaintiff's records, not the entire class. *Spielman*, 251 F.3d at 6. Defendants have not indicated the likely cost of auditing a single employee's payroll record for only seven months. Assuming, as the complaint alleges, that defendants employ at least thirty to fifty teachers, auditing a single teacher's payroll records would likely be more in the neighborhood of $1,750 ($52,500 divided

by 30), if not less.

Finally, defendants contend plaintiff could also be awarded attorneys' fees after a successful prosecution of his claims, which are included in the amount-in-controversy calculation. *See* Mass. Gen. Laws ch. 149 § 150 (mandatory attorneys' fees award for violations of Chapter 151); *Spielman*, 251 F.3d at 6 (attorneys' fees are included in the amount-in-controversy calculation when a statute allows recovery of those fees). Defendants point to a wage case in this district, *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212 (D. Mass 2004), where attorneys' fees of $68,149.17 were awarded.

Defendants have the burden of showing there is a "reasonable probability" that the amount in controversy exceeds $75,000. *Fayard*, 522 F.3d at 48. They have pointed to a single case where fees of more than $68,000 were awarded, but this appears to be mark the very upper end of the spectrum. *See, e.g., Rudy v. City of Lowell*, 883 F. Supp. 2d 324, 328 (D. Mass. 2012 ) (awarding $47,101 in attorney's fees and costs); *Kazanjian v. MSM Enterprises, Inc.*, 1995 WL 140153, at *4 (D. Me. Mar. 15, 1995) (awarding $14,168.20 in attorneys' fees). Without further analysis from defendants as to why this relatively straightforward case would be substantially more complex than average, the Court cannot find that the attorneys' fees awarded would exceed the approximately $60,000 needed to reach the jurisdictional amount.

In short, the amount in controversy here is no greater than the alleged wages, trebled (no more than $13,728) plus the cost of an audit (likely approximately $1,750), plus reasonable attorney's fees and expenses (likely in the neighborhood of $15,000 to $25,000, and no greater than $50,000). Accordingly, the case will be remanded to the Superior Court for lack of subject-matter jurisdiction.

### E. Attorneys' Fees

Plaintiff requests attorneys' fees incurred as a result of removal under 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The First Circuit has not defined what constitutes "objectively reasonable" grounds for removal, although many district courts have declined to award fees unless the facts are "so one-sided as to have made remand a foregone conclusion." *See, e.g.*, *Youtsey*, 734 F. Supp. 2d at 239. Plaintiff contends that removal here was not objectively reasonable under that standard.

Here, the civil cover sheet claimed damages of more than $250,000; the complaint did not allege how many hours plaintiff worked, how much he was paid, or his hourly wage; and at least some case law supported defendants' removal. Accordingly, remand was not a foregone conclusion, and defendants had an objectively reasonable basis for removal. *See Ophnet, Inc. v. Lamensdorf*, 2005 WL 3560690, at *3 (D. Mass. Dec. 27, 2005) (objective basis for removal where case law supported defendants' position and defendants provided facts to support their allegations). Plaintiff's request for attorney's fees will therefore be denied.

## III. Conclusion

For the foregoing reasons, plaintiff's motion to remand is GRANTED as to remand and DENIED as to attorneys' fees. The case is REMANDED to the Massachusetts Superior Court for Suffolk County. Defendant's motion to dismiss shall remain pending after remand, and the stay as to plaintiff's response to that motion is lifted.

**So Ordered.**

                                                /s/ F. Dennis Saylor  
                                                F. Dennis Saylor IV  
Dated: February 21, 2014            United States District Judge